## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID JANKOWSKI,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:13-cv-194** |
| **v.** | ) |
| | ) |
| **ROBERT LELLOCK, LYNN MEYERS-** | ) |
| **JEFFREY, RONALD ZANGARO,** | ) |
| **DALE FREDERICK, LEE B. NICKLOS,** | ) |
| **JODY BUCHHEIT SPOLAR, ROBERT** | ) |
| **FADZEN, JR., KENNETH SCOTT III,** | ) |
| **SHERMAN SHRAGER, WILLIAM ISLER,** | ) |
| **MARK BRENTLEY, SR., JEAN FINK,** | ) |
| **DARLENE HARRIS, ALEX D. MATTHEWS,** | ) |
| **EVELYN NEISER, MAGGIE (MARGARET)** | ) |
| **SCHMIDT, RANDALL TAYLOR, JEAN** | ) |
| **WOOD,** *individually and in their official* | ) |
| *capacities***, and** | ) |
| **THE BOARD OF PUBLIC EDUCATION OF** | ) |
| **THE SCHOOL DISTRICT OF PITTSBURGH,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Presently pending before the Court is the MOTION TO DISMISS PLAINTIFF'S

AMENDED COMPLAINT (ECF No. 16), with brief in support (ECF No. 17), filed by the Board

of Public Education of the School District of Pittsburgh (the "School District") and Lynn

Meyers-Jeffrey, Ronald Zangaro, Dale Frederick, Lee B. Nicklos, Jody Buchheit Spolar, Robert

Fadzen, Jr., Kenneth Scott, III, Sherman Shrager, William Isler, Mark Brentley, Sr., Jean Fink,

Darlene Harris, Alex D. Matthews, Evelyn Neiser, Maggie (Margaret) Schmidt, Randall Taylor,

and Jean Wood, individually and in their official capacities, (collectively, the "Individual

Defendants"). David Jankowski ("Plaintiff") filed a response in opposition to the motion (ECF

No. 18).  Accordingly, the matter has been fully briefed and is ripe for disposition.

## I.  Background

As the law requires, all disputed facts and inferences therefrom are to be resolved in favor of Plaintiff, the non-moving party.  The following facts are drawn from the Amended Complaint, and the factual allegations therein are accepted as true for the purpose of this Memorandum Opinion.

The actions which gave rise to this lawsuit took place at Arthur J. Rooney Middle School (the "School") during the 1998-1999 school year, when Plaintiff was a 15-year-old student at the School.   Compl. ¶¶ 3, 29.  Defendant Lellock was employed by the School District as a Police Officer at the School.  *Id.*  ¶ 4.  Defendant Meyers-Jeffrey worked as a Detention Aide at the School.  *Id.* ¶ 9.  Defendant Zangaro was the School's principal.  *Id.* ¶ 10.  Defendant Frederick was the superintendent of the School District.  *Id.* ¶ 11.  Defendant Nicklos was the District's Director of Employee Relations.  *Id.* ¶ 12.  Defendant Spolar was the Associate Director of Employee Relations.  *Id.* ¶ 13.  Defendant Fadzen was the Chief of School Safety for the School District.  *Id.* ¶ 14.  Defendant Scott was the Chief of School Police.  *Id.* at ¶ 15.  Defendant Schrager worked as a teacher at the School.  *Id.* ¶ 16.  Defendants Isler, Brentley, Fink, Harris, Matthews, Neiser, Schmidt, Taylor, and Wood were School Board members.  *Id.* ¶¶ 17-25.

Early in the school year, Lellock approached Plaintiff and purported to befriend him, saying that he was trying to keep him out of trouble.  *Id.* ¶ 31.  Over time, Lellock's conduct allegedly grew more inappropriate.  *Id.* ¶ 32-33.  Sometime in the fall of 1998, Plaintiff was in a detention/study hall monitored by Defendant Meyers-Jeffrey when Lellock entered the room and announced that Plaintiff was "in trouble again."  *Id.* ¶ 33.  Meyers-Jeffrey permitted Lellock to remove Plaintiff from the classroom, ostensibly to speak with him about why he was in trouble.

*Id.* After leaving the classroom, Plaintiff followed Lellock to a nearby supply closet, where Lellock went on to grab Plaintiff's genitals through his clothing. *Id.* ¶ 35. At the end of this encounter, Lellock warned Plaintiff, "[i]f you don't straighten up, I'm going to rip [your genitals] off." *Id.*

Defendant Lellock's allegedly abusive conduct continued throughout the early part of the school year, though it is unclear from the Amended Complaint for precisely how long and whether it actually lasted into 1999. *Id.* ¶ 36. Each time Lellock pulled Plaintiff from Meyers-Jeffrey's classroom, he directed him to the same nearby supply closet, locked the door, and allegedly engaged in a number of highly disturbing sexual acts. *Id.* ¶¶ 39, 41. Lellock rubbed his body against Plaintiff's body; grabbed and squeezed Plaintiff's genitals through his clothing; requested that Plaintiff touch his genitals; requested that Plaintiff manually stimulate his penis; requested that Plaintiff perform oral sex on him; grabbed and caressed Plaintiff's buttocks; and forced his hand under Plaintiff's clothing and toward Plaintiff's genitals. *Id.* ¶ 39(a)-(g). On one occasion, Lellock handcuffed Plaintiff's hands behind his back and grabbed, squeezed, and fondled Plaintiff's genitals. *Id.* ¶ 42. Lellock ended each encounter in the supply closet by telling Plaintiff not to mention the incident to anyone and either expressly or impliedly threatening Plaintiff if he failed to heed the warning. *Id.* ¶ 40. Plaintiff obliged, never revealing this conduct to anyone.

While most of the alleged incidents took place in the supply closet, another incident took place outside of the School when Lellock approached Plaintiff in his police cruiser and demanded that he get inside. *Id.* ¶¶ 43-45. After Plaintiff did so, Lellock pointed to a $50.00 bill and said to Plaintiff, "I will give you that $50.00 if you will give me a hand job." *Id.* ¶ 45. Plaintiff refused, and Lellock eventually permitted Plaintiff to leave the vehicle. *Id.* ¶ 46.

Plaintiff alleges that Lellock was permitted to remove many other male students from Meyers-Jeffrey's classroom during the 1998-1999 school year, and that they, too, were sexually abused. *Id.* ¶ 47. One such encounter came to light in May 1999. On May 28, 1999, Defendant Zangaro witnessed Lellock leaving a storage closet with an unidentified student. *Id.* ¶ 57. As a result, the School District launched an investigation into Lellock's conduct. *Id.* As part of the investigation, Lellock was interviewed by School District personnel, and he also wrote a memo to Defendant Spolar, the School District's Associate Director of Employee Relations. *Id.* ¶ 58; Compl. Ex. 1. In the memo, Lellock attempted to explain why he was in the closet by saying that he was wrestling with the student. *Id.* Lellock wrote that he recalled being in the storage closet with this same student one other time to question him about an incident. *Id.* He also acknowledged that he sometimes used "the hallway, a conference room and the Principal's office to meet with students" and that he had to meet with students in areas "where they wouldn't be seen by others" because otherwise "they are less reluctant to talk." *Id.*

On June 23, 1999, Defendant Fadzen, the Chief of School Safety for the School District, prepared a memo to Defendant Frederick, the District's Superintendent, concerning the Lellock investigation. *Id.* ¶ 87; Compl. Ex. 3. The memo reads, in its entirety, as follows:

> On June 22, 1999 I was allowed by Jodi Spolar to sit in on the second interview with Officer Robert Lellock.
>
> At the conclusion of the interview I was advised by Jodi Spolar that interviews were conducted without my presence with the children involved, and it was her opinion and Vicki Beatty's, of Campbell Durrant and Beatty's opinion [*sic*] that no issues needed forwarded to Law Enforcement and no grounds existed to terminate Lellock's employment. I want to be on record as recommending Lellock's immediate termination and further advising Pittsburgh Police irregardless [*sic*] of the current statements, or evidence.
>
> In the alternative I would like to see the children interviewed by a trained child abuse specialist from Western Psychiatric or another qualified institution. I have made this request repeatedly to Jodi Spolar from day one in this case, but she does

4

not seem to understand the need to check every possibility out completely. Please
advise.

*Id.* Despite Fadzen's recommendation, the investigation was allegedly not reported to law enforcement officials, and the students involved were never interviewed by child abuse specialists. Compl. ¶ 88. Furthermore, Jankowski was never contacted or interviewed as part of the investigation; his parents were never informed of the possibility that he had been sexually abused; and he was never offered counseling or advised to seek counseling by the School District. *Id.* ¶¶ 83-85.

Although Lellock was not terminated following the May 28th incident, he was suspended for 20 days, commencing July 6, 1999.[1] *Id.* ¶ 73. He was informed of his suspension in a letter dated July 1, 1999, from Defendant Nicklos, the School District's Director of Employee Relations. *Id.* ¶ 74. The letter, which was apparently also sent to Defendants Spolar, Shrager, Fadzen, Scott, and Zangaro,[2] explained in part that the School District's "investigation has revealed that you pulled the student in question from class on at least one other occasion to go to the storage room and wrestle. In addition, the evidence reveals that you have gone to the storage room with other students under similar circumstances." Compl. Ex. 2.

In September 2012, Defendant Lellock was arrested and charged with several crimes involving allegations similar to those raised by Plaintiff. *Id.* ¶ 48. As part of its investigation into the criminal charges filed against Lellock, Pittsburgh Bureau of Police detectives interviewed Meyers-Jeffrey. *Id.* ¶ 79. The detectives asked Meyers-Jeffrey to identify students whom Lellock had removed from her classroom during the 1998-1999 school year by pointing to

---

1. Plaintiff does not allege that any of inappropriate encounters between Lellock and Plaintiff took place after the School District's investigation and Lellock's suspension.

2. Plaintiff alleges that Spolar, Shrager, Fadzen, Scott, and Zangaro were sent the letter because they were "cc'd" on it. He does not allege any facts that show these Defendants actually received or read the letter.

their pictures in a yearbook. *Id.* ¶ 80. Meyers-Jeffrey identified Plaintiff as one such student. *Id.* ¶ 81. Plaintiff alleges that because Meyers-Jeffrey was able to identify Plaintiff in 2013, she would have also been able to do so in 1999 had she been questioned as part of the investigation into the May 28th incident. *Id.* ¶ 82.

Plaintiff never revealed Lellock's conduct to anyone until February 2013, when he saw a television news story regarding Lellock's arrest. *Id.* ¶ 98. The story forced him to tears, and for the first time, he spoke about the alleged abuse, telling his father about Lellock's conduct. *Id.*

Plaintiff initiated this action on February 6, 2013,[3] by filing a two-count Complaint (ECF No. 1) against Lellock and the School District. On April 8, 2013, the School District filed a motion to dismiss the claim against it. (ECF No. 9). Plaintiff responded to the School District's motion by filing an Amended Complaint on April 22, 2013 (ECF No. 13), adding allegations against the 17 Individual Defendants and two additional Counts. On May 7, 2013, the Court stayed the proceedings pending the resolution of the state criminal case against Lellock. On July 29, 2013, Lellock was found guilty of various sex-related offenses. Accordingly, the Court lifted the stay on October 4, 2013.

As it now stands, the Amended Complaint contains four Counts. In Count I, Plaintiff raises a claim under 42 U.S.C. § 1983 against Lellock for violating his constitutional right to bodily integrity, as guaranteed by the Fourteenth Amendment to the United States Constitution.[4] In Count II, Plaintiff alleges a § 1983 claim against the School District for maintaining a policy or custom of deliberate indifference to the sexual abuse of students by Lellock and for failing to

---

3. It is not clear to the Court how Plaintiff, on the one hand, did not alert anyone of the suspected abuse until February 2013, yet, on the other hand, filed his original Complaint just six days into that same month.

4. Although Attorney Warner Mariani entered an appearance on behalf of Defendant Lellock on April 4, 2013, the Court permitted Attorney Mariani to withdraw from his representation on September 24, 2013. Lellock is currently unrepresented in this matter. He is not a party to this motion and has not filed an answer or Rule 12 motion on his own behalf.

train and supervise its employees with regard to reporting suspected abuse. In Count III, Plaintiff asserts a § 1983 claim against the Individual Defendants, in their official and individual capacities, and the School District, alleging that their investigation of the 1999 incident involving the unidentified student was inadequate and thus failed to reveal that Plaintiff was also a victim of abuse. Finally, in Count IV, Plaintiff raises "supplemental state claims" against the Individual Defendants.

The School District and Individual Defendants renewed their motion to dismiss on May 7, 2013. They contend that Counts II through IV should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement

to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Discussion

### A. Documents Considered in Deciding Rule 12(b)(6) Motion

As a preliminary matter, the Court must determine the extent of the documents it will consider in deciding Defendants' motion to dismiss. Plaintiff has attached 52 pages of excerpts from the transcript of Defendant Lellock's criminal trial to his response brief. He relies heavily

on the testimony adduced during that trial in his Brief in Response, in effect supplementing the allegations in the Amended Complaint.

In deciding a motion to dismiss, a district court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted) (brackets in original). However, a transcript from a prior proceeding is not among the additional documents that may be considered. *See Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 427 n.7 (3d Cir. 1999)) (concluding that trial court erred in judicially noticing party's deposition testimony in a prior proceeding to establish facts in the pending matter). To do so would convert the motion to dismiss into a motion for summary judgment. *Id.* Accordingly, because the criminal trial transcript has not been attached to or submitted with the Complaint, the Court will not consider the transcript in deciding this motion. Its review will be limited to the factual allegations in the Amended Complaint, itself.

### B. Section 1983 Claims

Section 1983 of the Civil Rights Act of 1871 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must establish (1) the deprivation of a right secured by the United States Constitution or a federal law and (2) that the deprivation was committed by a person acting under color of state law. *Dipippa v. Union Sch.*

*Dist.*, 819 F. Supp. 2d 435, 439-40 (W.D. Pa. 2011) (citation omitted). The parties do not dispute that all of the named Defendants are state actors for purposes of § 1983. Rather, the focus is on whether, in Count II, the School District may be held liable for the violation of Plaintiff's right to bodily integrity, and whether, in Count III, Plaintiff has sufficiently pled a violation of a federal right.

### 1. Count II – § 1983 Claim Against the Defendant School District

Count II alleges that the Defendant School District violated Plaintiff's right to bodily integrity by maintaining a policy or custom of deliberate indifference to sexual abuse and by failing to adequately train its employees to detect and report instances of suspected sexual abuse. The School District argues that Plaintiff's claim fails because he has not sufficiently alleged a basis for imposing municipal liability on the School District. The Court agrees.

It is well settled that a local governing body may not be held vicariously liable for the constitutional torts of its employees under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality may, however, be held liable for its own unlawful conduct. *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1359 (2011) (citations omitted). To impose liability in such case, a plaintiff must show that the alleged constitutional violation was caused by a municipal custom, practice, or policy. *Monell*, 436 U.S. at 694. The Third Circuit Court of Appeals has recognized three scenarios in which a government employee's actions may be deemed to be the result of a policy or custom that may subject the government entity to § 1983 liability:

> (1) when an appropriate officer or entity promulgates a statement of policy and the employee's act is an implementation of that policy; (2) when the act of the policymaker violates federal law; and (3) when a policymaker fails to act affirmatively despite the obvious need for action to control agents of the government.

*Douglas v. Brookville Area Sch. Dist.*, No. 10-cv-1087, 2010 WL 5313448, at *6 (W.D. Pa. Dec. 20, 2010) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)). Moreover, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, -- U.S. --, 131 S. Ct. at 1359.

Plaintiff's claim implicates the latter two scenarios: liability based on inaction and failure-to-train. Our appellate court has instructed that the analysis is the same for both of these types of claims. *See Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (citations omitted) (explaining that the Third Circuit Court of Appeals has "applied the Supreme Court's rulings in failure-to-train cases to other claims of liability through inaction"). Therefore, these two theories of liability will be analyzed together.

Failure-to-act and failure-to-train claims raise difficult issues of proof because they are "a step removed from the constitutional violation resulting from that failure."[5] *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 364 (W.D. Pa. 2011). As a result, the Supreme Court has consistently warned that such claims must be closely scrutinized "lest municipal liability under § 1983 collapse into *respondeat superior*." *Id.* (citations omitted). A municipality may only be held liable for its failure to train employees – or failure to take action – when its conduct amounts to "deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Id.* (citation and quotation marks omitted). In addition, a plaintiff must show that the government's conduct caused the constitutional violation at issue.

---

5. Plaintiff's claim is based not on a failure-to-train Lellock, the actor actually responsible for the alleged violation of Plaintiff's constitutional rights, as is usually true in these types of cases. Instead, Plaintiff has attempted to expand this theory to the School District's failure to train other employees to detect and report abuse. This Court has previously expressed skepticism about whether "such an attenuated failure-to-train claim is ever cognizable under § 1983." *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 364 (W.D. Pa. 2011). But because Plaintiff's claim fails for other reasons, "the Court need not consider the broader question of whether a school district's failure to provide this type of second-hand training can ever provide a legitimate basis for governmental liability under § 1983." *Id.*

*Sallie v. Lynk*, No. 10-cv-456, 2012 WL 995245, *8 (W.D. Pa. March 23, 2012).

"Deliberate indifference" in this context is a high standard of fault, requiring "more than negligence or even gross negligence." *Haines v. Forbes Rd. Sch. Dist.*, No. 07-cv-00852, 2009 WL 89323, at *5 (M.D. Pa. Jan. 13, 2009). Only when municipal "policymakers are on actual or constructive notice that a particular omission in their training program causes [ ] employees to violate citizens' constitutional rights" will a municipality "be deemed deliberately indifferent" if it fails to alter its training. *Id.* at 1360. "It is the decision not to change course after gaining such notice that propels the adherence to the chosen course of action, in effect a 'policy of inaction,' to the 'functional equivalent' of a decision by the [policymakers] to violate the Constitution." *Sallie*, 2012 WL 995245, *8 (citing *Connick*, 131 S. Ct. at 1360). Thus, in most cases, to adequately plead "deliberate indifference", a plaintiff must allege that the municipality was aware of a "pattern of similar constitutional violations" committed by untrained employees in the past yet still declined to act. *Id.*; *see also Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 176 (3d Cir. 2001) (explaining that "deliberate indifference can be established "by alleging that policymakers were aware of similar conduct in the past, but failed to take precautions against future violations").

However, in *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court left open the possibility that alleging such a pattern of previous constitutional violations might not be required to establish "deliberate indifference." *Brown*, 520 U.S. at 409 (1997) (citing *City of Canton*, 489 U.S. at 390 n.10). As the Supreme Court explained, in certain rare cases "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Id.* In such case, "the need for more or different

training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. In other words, the specific constitutional violation suffered must be "a highly predictable consequence of the failure to train." *Brown*, 520 U.S. at 409.

Plaintiff has attempted to plead "deliberate indifference" by alleging that certain unidentified "supervisory personnel" were put on notice that Defendant Lellock was removing students from classrooms for unsupervised, one-on-one encounters, which should have triggered action on their part. Am. Compl. ¶¶ 53, 54, 56. Even accepting these conclusory allegations as true, they are not sufficient as a matter of law to establish liability on behalf of the School District. While the District may have known that these encounters were taking place, Plaintiff has not alleged that the District had any indication that there was an ongoing pattern of constitutional violations taking place within the confines of the School. *See Brown*, 520 U.S. at 411 ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a *violation of a particular constitutional or statutory right will follow the decision*.") (emphasis added); *Douglas*, 836 F. Supp. 2d at 363 (concluding that plaintiff could not establish deliberate indifference by proving that school officials knew plaintiff frequently entered building together with defendant teacher "in light of the many innocuous reasons why a student" might do so). Without pleading such a pattern, there is no way to establish that the School District should have taken any further action.

Plaintiff also contends that this case is governed by the narrow "single-incident" exception recognized in *Canton* and its progeny in the Third Circuit. *See* Pl.'s Br. in Resp. 12 (citing *Beers-Capitol, et al. v. Whetzel, et al.*, 256 F.3d 120 (2001)). He argues that even if the

School District was not aware of a pattern of constitutional violations involving sexual abuse of students, the risk of constitutional violations from permitting students to be removed from classrooms was so obvious that the District should have trained its employees to appropriately handle such situations and report the purportedly suspicious behavior. The Court finds that Plaintiff has not adequately pled facts to support such a theory. Just as in *Douglas*, where this Court rejected the plaintiff's claim that school parking lot monitors should have been better trained about the defendant-school's policy prohibiting teachers from transporting students in their cars, "[a] teacher's decision to" permit school police officers to remove students from classrooms "does not inherently threaten the student's welfare." *Douglas*, 836 F. Supp. 2d at 362. There may be instances where a school police officer has a legitimate reason to take a student out of the classroom. *See id.* at 363. Thus, it cannot be said that sexual abuse of students was the "plainly obvious consequence" of permitting school police officers to remove students from classrooms upon request.

In sum, the Court recognizes that Lellock's alleged conduct was abhorrent. However, the School District may only be liable for its "*own* illegal acts." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original). It cannot be held to task simply for employing Lellock during the relevant time period, no matter how disturbing his conduct may have been. The Amended Complaint seeks to do just that, as it has not adequately pled a basis – under either a custom/policy theory or a failure to train theory – for establishing municipal liability. Plaintiff's § 1983 claim against the School District will be **DISMISSED** without prejudice.

### 2. Count III -- § 1983 Claims Against the Individual District Defendants and the School District

In Count III, Plaintiff alleges a somewhat nebulous claim against the School District and

the Individual Defendants, in their official and individual capacities.[6] The precise contours of this claim are difficult to define, but the gist of it is as follows: Plaintiff alleges that the Individual Defendants and the School District failed to adequately investigate the May 28, 1999, incident involving Lellock and the unidentified student. Had the School District and Individual Defendants conducted a more thorough investigation, Plaintiff alleges that they would have identified him as one of Lellock's potential victims, interviewed him, and recommended counseling. Those measures, Plaintiff claims, would have mitigated the psychological harm he suffered, which only started to subside when he finally revealed the conduct in 2013.

The Individual Defendants and the School District argue that Count III should be dismissed because Plaintiff has not alleged a violation of a federally created right. As explained above, 1983 does not create substantive rights. *Maher v. Gagne*, 448 U.S. 122, 129 n.11 (1980). "Consequently, a plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of federal law." *Pitchford v. Borough of Munhall*, 631 F. Supp. 2d 636, 644 (W.D. Pa. 2007). In his brief, Plaintiff responds by identifying the right that has been allegedly violated in Count III as a "penumbra" of the right to bodily integrity guaranteed by the Fourteenth Amendment. Unless this "penumbra" is recognized, he argues, the right to be free from sexual abuse by public school employees will become ineffectual. The Court cannot agree with this reasoning.

Insofar as Plaintiff is asking this Court to recognize a new substantive due process right,

---

6. The United States Supreme Court has instructed that suits against government officials in their official capacities are functionally equivalent to suits against the government entity, itself. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). That being the case, it is a well-established practice in this Circuit to dismiss "redundant § 1983 claims asserted against public officers in their official capacities where a claim has also been made against the public entity that employs them." *Foglesong v. Somerset Cnty.*, No. 13-CV-77, 2013 WL 795064, at *9 (W.D. Pa. March 4, 2013) (collecting cases). Accordingly, because Plaintiff has also named the School District as a Defendant in Count III, the claims against the Individual District Defendants in their official capacities will be **DISMISSED** with prejudice.

he faces an uphill battle. Courts have "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Such is the case here. While the Court recognizes that students have a right to not be sexually abused by public school employees, *see Stoneking*, 882 F.2d at 726, Plaintiff has cited no authority in support of his novel suggestion that this right necessarily includes a right to an adequate investigation that *might* uncover that he was a potential abuse victim. In fact, the only other federal district court which has considered this question has held that the right to bodily integrity is not so expansive. *See Plumeau v. Yamhill Cnty. Sch. Dist. No. 40*, 907 F. Supp. 1423, 1438 (D. Or. 1995).

In *Plumeau*, the plaintiff was a public elementary school student who was sexually abused by a school janitor over a period of three years. *Id.* at 1429. The plaintiff did not come forward with her allegations of abuse until about five years after her abuser was convicted of sexually assaulting another student. *Id.* at 1432. As part of her failure to train claim against the defendant-school district, the plaintiff alleged that the district exhibited deliberate indifference, in part, by "failing to investigate and identify her as one of [the janitor's] other victims when the sexual abuse . . . came to light in April 1987." *Id.* at 1438. Just as the Plaintiff in this case has done, the plaintiff in *Plumeau* claimed that she experienced greater psychological damage than she otherwise would have because of the district's failure to conduct a proper investigation. *Id.* The court concluded that these allegations could not independently support a § 1983 claim, explaining:

> [the plaintiff's] argument clearly addresses the *extent* of [her] damages from the underlying constitutional injury, *not* the *existence* of an independent injury . . . Assuming that a constitutional injury has been inflicted, there is no constitutional mandate that the responsible government entity mitigate the damages flowing

from the injury. In other words, the District's alleged failure to further investigate in 1987 might be used to show the *extent* of [the plaintiff's] damages should she be able to prove that the District is liable for the sexual abuse. However, the failure to further investigate is not an independent claim under § 1983.

*Id.* at 1438 (emphasis in original).

The Court finds that the district court's rationale in *Plumeau* is well-reasoned and persuasive. As was the case there, Plaintiff has not alleged that Lellock continued to abuse him *after* the allegedly inadequate investigation was conducted. Therefore, by the time of the investigation in early summer 1999, Plaintiff's "liberty interest in being free from sexual abuse by [Lellock] while attending [the Middle School] was fully protected[.]" *Id.* From a constitutional standpoint, the harm – if any – had already occurred. After that, he had no independent, federally guaranteed right to an investigation that could not have in any way prevented the original harm. Because Count III does not allege the violation a right arising under the constitution or a federal statute, the claims set forth therein against the School District and the Individual Defendants in their individual capacities will be **DISMISSED** with prejudice. The Court will not permit Plaintiff to proceed under this theory should he file an second Amended Complaint because it would be futile

## C. Count IV – Supplemental State Law Claims

Plaintiff also alleges "supplemental state claims" against the Individual Defendants. He bases these claims, which appear to sound in negligence, on the same conduct alleged in Count III, averring that the Individual Defendants had a duty to adequately investigate the 1999 incident (which did not involve Plaintiff) and that their failure to do so, and in turn to report the incident to authorities, deprived Plaintiff of an opportunity for timely treatment of the psychological damages he allegedly suffered on account of Defendant Lellock's conduct. While Plaintiff's attempt to plead a cause of action for negligence is problematic for several reasons,

18

the Court need not reach the merits of this claim. Instead, the Court finds that the Individual Defendants are entitled to immunity pursuant the Pennsylvania Political Subdivision Tort Claims Act (the "Act"), 42 Pa. C.S. §§ 8541-8564.

Under the Act, subject to limited exceptions not applicable here, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person. *Id.* § 8541. Moreover,

> [a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

*Id.* § 8545. The School District is a "local agency" for the purposes of the Act. *See Petula v. Mellody*, 631 A.2d 762, 765 (Pa. Commw. Ct. 1993) (citation omitted). Thus, the Individual Defendants, as employees of the School District, are entitled immunity to the same extent as the District for actions within the scope of their duties.

There is, however, an important limitation on this broad grant of immunity. A government official sued in an individual capacity may forfeit immunity if the alleged actions constitute "a crime, actual fraud, actual malice or willful misconduct . . ." 42 Pa. C.S. § 8550. As the Commonwealth Court of Pennsylvania has explained in an analogous case involving sexual abuse in a school, "[t]his exception strips employees of their governmental immunity if they are found to be guilty of intentional torts." *Scott v. Willis*, 543 A.2d 165, 169 (Pa. Commw. Ct. 1988). "Intentional" in this contexts means that "the actor desired to bring about the result that followed," or was at least "aware that it was substantially certain to ensue." *Pursel v. Parkland Sch. Dist.*, No. 2004-C-383, 2005 WL 1009491, at *136 (Pa. Com. Pl. Lehigh Cnty. Jan. 11, 2005) (citation omitted).

In this case, Plaintiff baldly avers that the Individual Defendants lost the cloak of official

immunity because they engaged in willful misconduct. This allegation appears to be based, in part, on the Individual Defendant's purported failure to comply with the requirements of the Pennsylvania Child Protective Services Law, 42 Pa. C.S. § 6301 *et seq.* in the aftermath of the 1999 incident. However, the failure to report suspected child abuse, without more, does not constitute willful misconduct. *See Pursel*, 2005 WL 1009491, at *135-36. Only if Plaintiff alleged that the Defendants had actual knowledge of prior acts of sexual abuse by Lellock and intentionally did not report them, and thereafter the *actual abuse of Plaintiff continued* – which he has not done – would that be the case. *See id.* The other allegations related to the allegedly insufficient handling of the 1999 incident are similarly insufficient to amount to willful misconduct. *Cf. DiSalvio v. Lower Merion High Sch. Dist.*, 158 F. Supp. 2d 553, 564 (E.D. Pa. 2001) (concluding that plaintiff sufficiently pled willful misconduct where defendants were aware of harassment "that the continued harassment of [plaintiff] was substantially certain to follow if they did not act"). Because the Amended Complaint does not make out a plausible claim of willful misconduct, the Individual Defendants are immune from suit. Accordingly, the state law claims against said Individual Defendants will be **DISMISSED** with prejudice.

### D. Leave to Amend

If a civil rights complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6), the Court must permit a curative amendment – even if the plaintiff does not seek leave to amend – unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, the Court will grant Plaintiff leave file a second Amended Complaint other than as noted above.

However, should Plaintiff choose to do so, he is advised against adhering to the everything-but-the-kitchen sink approach to pleading reflected in the Amended Complaint. To

validly state claims against any of the Individual Defendants under § 1983, he must allege that they were personally involved in the alleged wrongdoing. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). In addition to the shortcomings hereinabove described, the Amended Complaint was also inadequate in that regard – especially as to the nine members of the School Board named as Defendants. *See id.* ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). In drafting another Amended Complaint, Plaintiff must be mindful of the high hurdle the personal-involvement requirement imposes and plead a sufficient factual basis from which the Court may reasonably infer that each Individual Defendant is liable for the alleged unconstitutional conduct. *See Iqbal*, 556 U.S. at 678.

## IV. Conclusion

Based on the foregoing reasons, the motion to dismiss will be **GRANTED**. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID JANKOWSKI,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:13-cv-194** |
| **v.** | ) |
| | ) |
| **ROBERT LELLOCK, LYNN MEYERS-** | ) |
| **JEFFREY, RONALD ZANGARO,** | ) |
| **DALE FREDERICK, LEE B. NICKLOS,** | ) |
| **JODY BUCHHEIT SPOLAR, ROBERT** | ) |
| **FADZEN, JR., KENNETH SCOTT III,** | ) |
| **SHERMAN SHRAGER, WILLIAM ISLER,** | ) |
| **MARK BRENTLEY, SR., JEAN FINK,** | ) |
| **DARLENE HARRIS, ALEX D. MATTHEWS,** | ) |
| **EVELYN NEISER, MAGGIE (MARGARET)** | ) |
| **SCHMIDT, RANDALL TAYLOR, JEAN** | ) |
| **WOOD,** *individually and in their official* | ) |
| *capacities***, and** | ) |
| **THE BOARD OF PUBLIC EDUCATION OF** | ) |
| **THE SCHOOL DISTRICT OF PITTSBURGH,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER OF COURT

AND NOW, this 6th day of November 2013, in accordance with the with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, and DECREED** that the

MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF NO. 16), filed by the

Defendant School District and Defendants Lynn Meyers-Jeffrey, Ronald Zangaro, Dale

Frederick, Lee B. Nicklos, Jody Buchheit Spolar, Robert Fadzen, Jr., Kenneth Scott III, Sherman

Shrager, William Isler, Mark Brentley, Sr., Jean Fink, Darlene Harris, Alex D. Matthews, Evelyn

Neiser, Maggie (Margaret) Schmidt, Randall Taylor, and Jean Wood, individually and in their

official capacities, is **GRANTED**.

**IT IS FURTHER ORDERED** that the caption of this action is hereby amended as

follows:

**DAVID JANKOWSKI,**

        **Plaintiff,**

        **v.**

**ROBERT LELLOCK,** *individually and in his official capacity*,

        **Defendant.**

)
)
)
)
)
)
)
)
)
)
)

**2:13-cv-194**

Plaintiff may file a second Amended Complaint on or before November 20, 2013. Defendant(s) shall respond by Answer or Rule 12 motion within fourteen (14) days of the date on which Plaintiff's second Amended Complaint is filed.

                        BY THE COURT:

                        s/Terrence F. McVerry
                        United States District Judge

cc:    **Gary M. Land, Esquire**
       Email: gml@fglmlaw.com
       **Amanda B. Kraft, Esquire**
       Email: abk@fgsmlaw.com
       **Justin T. Papciak, Esquire**
       Email: jtp@fglmlaw.com

       *Counsel for Plaintiff*

       **Stacey F. Vernallis, Esquire**
       Email: svernallis@grblaw.com
       **Ira Weiss, Esquire**
       Email: iraweiss@weisslawoffices.com
       **Matthew Fergus, Esquire**
       Email: mfergus@grblaw.com

       *Counsel for Defendants*