**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


**DAVID JANKOWSKI,**

    **Plaintiff,**

    **v.**

**ROBERT LELLOCK, LYNN MEYERS-
JEFFREY, and RONALD ZANGARO**,
*individually and in their official capacities*,

    **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)

**2:13-cv-194**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the MOTION TO DISMISS COUNTS II & III OF THE

SECOND AMENDED COMPLAINT (ECF No. 36), with brief in support (ECF No. 37), filed

by Defendants Lynn Meyers-Jeffrey ("Meyers-Jeffrey") and Ronald Zangaro ("Zangaro").

Plaintiff David Jankowski filed a BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO

DISMISS (ECF No. 38). The motion is ripe for disposition. For the reasons that follow, it will

be granted.

### I. Background

The parties are familiar with the background of this case, which is fully set forth in this

Court's Memorandum Opinion and Order of November 6, 2013. *See* ECF No. 30. Briefly,

Plaintiff was a student at Arthur J. Rooney Middle School during the 1998-99 school year and

alleges that he was sexually abused by Robert Lellock ("Lellock"), a school police officer.

Plaintiff claims that the abuse violated his right to bodily integrity, which is secured by the Due

Process Clause of the Fourteenth Amendment to the United States Constitution, as enforced

through 42 U.S.C § 1983. Furthermore, Plaintiff seeks to hold Meyers-Jeffrey and Zangaro

responsible for Lellock's alleged violation of his civil rights.

Plaintiff initially named Lellock, Meyers-Jeffrey, Zangaro, 15 other individuals, and the Pittsburgh Public School District as Defendants in this action and raised a variety of claims against them. In its prior Memorandum Opinion, this Court granted the motion to dismiss filed by all of the Defendants except Lellock, finding Plaintiff's First Amended Complaint inadequate in various respects: (1) it inadequately pled a basis for imposing municipal liability on the school district; (2) the § 1983 claims against the individual Defendants did not allege a violation of a federal right; and (3) the state law claims were barred by governmental immunity. At the same time, this Court permitted Plaintiff to file a Second Amended Complaint, but cautioned him of the high hurdle he had to overcome in order to successfully plead a claim against individual Defendants under § 1983.

Plaintiff filed his Second Amended Complaint on December 2, 2013, naming as defendants only Lellock, Meyers-Jeffrey, and Zangaro, in both their individual and official capacities. During the relevant time period, Meyers-Jeffrey was a detention aide at the school. Second Am. Compl. ¶ 38. Plaintiff alleges that Lellock "pulled" Plaintiff and 21 other male students out of Meyers-Jeffrey's classroom, many on more than one occasion, for private, one-on-one encounters, during which the alleged abuse occurred. *Id.* ¶ 40. Plaintiff alleges that Meyers-Jeffrey requested that Lellock remove Plaitniff from her classroom on certain occasions. *Id.* ¶ 42. Furthermore, he alleges that under the school's policies, Lellock should not have been permitted to remove students from classrooms for unsupervised encounters. *Id.* ¶ 44. He also alleges that Meyers-Jeffrey "knew, suspected, and/or should have known that Defendant Lellock's removal of his from her classroom would result in a substantial probability that his civil rights would be violated." *Id.* ¶ 47. Zangaro was the school's principal, and Plaintiff

alleges that he knew that Lellock was removing students for one-on-one encounters, yet failed to do anything to stop it and failed to properly train teachers on the school's policy prohibiting police officer's from removing students from classrooms. *Id.* ¶¶ 50-55.

In response, Meyers-Jeffrey and Zangaro filed the instant motion to dismiss, in which they seek to dismiss Counts II and III of the Second Amended Complaint. The Court notes that Lellock is not a party to the pending motion. Furthermore, he is currently unrepresented in this matter and has not filed an answer or Rule 12(b)(6) motion on his own behalf.

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show

"more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim."" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination

for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Discussion

Meyers-Jeffrey and Zangaro move to dismiss the claims against them in both their individual and official capacities.[1] They argue primarily that Plaintiff fails to allege that they

---

[1] Defendants argue that a government official sued in his official capacity is not a "person" for purposes of § 1983. Not so—the Supreme Court has expressly stated that "government officials sued in their official capacities *are* 'persons' under § 1983." *Monell v. N.Y. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (emphasis added). However, an official-capacity suit is generally viewed as just "another way of pleading an action against an entity of which an officer is an agent"—in this case, the school district. *Id.* The Court previously dismissed Plaintiff's claim against the school district, which was essentially the same claim that he now alleges against

were sufficiently personally involved in the alleged constitutional violation committed by Lellock and alternatively that they are entitled to qualified immunity. The Court will assume for the purpose of deciding this motion that Plaintiff has sufficiently made out a claim against Lellock. The sole question before the Court, then, is whether Plaintiff has adequately pled a basis for holding Meyers-Jeffrey and Zangaro responsible for that underlying constitutional violation. The answer to that question is "no."[2]

### A. Meyers-Jeffrey

Plaintiff claims that Meyers-Jeffrey is liable because she "knew, suspected, and/or should have known that Defendant Lellock's removal of [Plaintiff] from her class room would result in a substantial probability that his civil rights would be violated." Second Am. Compl. ¶ 47. Because Meyers-Jeffrey did not possess supervisory authority over Plaintiff, however, Plaintiff cannot, as a matter of law, impose liability on her. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), o*verruled in part on other grounds by Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("[E]xcept perhaps in unusual circumstances, a government official or employee who lacks supervisory authority over the person who commits a constitutional tort cannot be held, based on mere inaction, to have 'acquiesced' in the unconstitutional conduct."); *accord Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1414-15 (5th Cir. 1995) (holding that teacher who failed to report fellow teacher's sexual abuse of student could not be liable under § 1983 for fellow teacher's conduct); *Whitley v. Hanna*, 726 F.3d 631,

---

Meyers-Jeffrey and Zangaro, individually. Thus, no further analysis is needed with respect to the official capacity claims brought against these Defendants. They will be dismissed for the same reasons stated in the Court's prior Opinion and reiterated in this Opinion, namely, Plaintiff has failed to adequately plead deliberate indifference.

[2] Because the Court concludes that Plaintiff has not adequately pled that Meyers-Jeffrey or Zangaro can be held responsible for the underlying constitutional violation, it need not address the Defendants' argument as to qualified immunity.

640 (5th Cir. 2013) (recognizing that a non-supervisory government employee may be held liable for subordinate's conduct only if he possesses "a state-law created right of legal control" over the employee committing the violations). Therefore, the claim against Meyers-Jeffrey, in both her official and individual capacities, will be **DISMISSED** with prejudice.

### B. Zangaro

Similarly, Zangaro cannot be held liable for Lellock's constitutional tort merely because he was the principal of the school where Lellock was employed. Instead, Plaintiff must plead sufficient facts to show that Zangaro actually caused—or was the moving force in—the violation of Plaintiff's Fourteenth Amendment rights. In that vein, the Court reads the Second Amended Complaint as attempting to plead two related yet independent bases of recovery against Zangaro. First, Plaintiff claims that Zangaro knew or should have known that Plaintiff was being removed from Meyers-Jeffrey's classroom for one-on-one encounters, yet failed to take action to stop the sexual abuse Plaintiff was suffering (the "knowledge-and-acquiesce theory"). Second, he claims that Zangaro failed to train teachers on the application of the school's policy against permitting police officers to remove students from classrooms for unsupervised, one-on-one encounters (the "failure-to-train theory").

With respect to the first theory of recovery, courts in this Circuit have adopted the Fifth Circuit Court of Appeals' test for determining whether a supervisory official can be liable when a subordinate violates a student's right to bodily integrity:

(1) the [supervisory] defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and

(2) the [supervisory] defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

(3) such failure caused a constitutional injury to the student.

*Graham v. Ambridge Area Sch. Dist.*, No. 07–1640, 2010 WL 2207999, at \*9-10 (W.D. Pa. May 26, 2010) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994)); *see D.C.G. ex rel. E.M.G. v. Wilson Area Sch. Dist.*, No. 07–1357, 2009 WL 838548, at \*10 (E.D. Pa. Mar. 27, 2009) (also adopting the Fifth Circuit's test).[3]  Deliberate indifference is a high standard of fault.[4]  *Connick v. Thompson*, --- U.S. ----, 131 S. Ct. 1350, 1359 (2011) (internal quotation marks omitted).  Accordingly, a negligent failure to recognize the abuse committed by a subordinate is insufficient to establish liability.  *Black by Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 713 (3d Cir. 1993) ("Under *Stoneking* [*v. Bradford Area Sch. Dist.*, 882 F.3d 720 (3d Cir. 1989)], however, a plaintiff must do more than show the defendant could have averted her injury and failed to do so.").

---

[3] The district courts in this Circuit that have adopted this test for supervisory liability have done so because it is consistent with years of precedent "from the United States Court of Appeals for the Third Circuit indicating that supervisory liability requires that the supervisor 'had knowledge of and acquiesced in' the subordinate's violations."  *Graham*, 2010 WL 2207999, at \*9-10 (citation omitted).  More recently, the Third Circuit Court of Appeals has expressed uncertainty about the proper scope of supervisory liability after the Supreme Court's landmark decision in *Iqbal*.  *See Bayer v. Monroe Cnty. Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) ("In light of the Supreme Court's recent decision in [*Iqbal*], it is uncertain whether proof of such personal knowledge, with nothing more, would provide a sufficient basis for holding [defendant] liable with respect to plaintiffs' Fourteenth Amendment claims.").  However, the Court of Appeals has not decided whether *Iqbal* actually requires it to refine the test it previously endorsed.  *See, e.g.*, *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.8 (3d Cir. 2010); *Lawal v. McDonald*, --- Fed. Appx. ----, 2014 WL 718428, at \*2 n.5 (3d Cir. Feb. 26, 2014).  As a result, this Court will proceed under the assumption that Plaintiff could make out a valid claim for supervisory liability by showing that Zangaro had actual or constructive knowledge of the violation of his rights and failed to take action in the face of such knowledge.

[4] Plaintiff's reliance on *Beers-Capitol v. Whetzel*, 256 F.3d 120 (3d Cir. 2001), is misplaced, as that case involved an exploration of the meaning of deliberate indifference under the Eighth Amendment.  Plaintiff fails to recognize that there are different deliberate indifference standards for establishing a substantive Eighth Amendment violation and for imposing supervisory or municipal liability for another's constitutional violation, which Plaintiff seeks to do in this case.  *See Farmer v. Brennan*, 511 U.S. 825, 840-41 (1994) (explaining that "the proper standard for determining when a municipality will be liable under § 1983 for constitutional wrongs does not turn on any underlying culpability test that determines when such wrongs have occurred").

The Second Amended Complaint does not allege facts that would support the conclusion that Zangaro was aware of a "pattern of inappropriate sexual behavior" by Lellock. Nor do Plaintiff's conclusory allegations permit an inference that sexual abuse would be the plainly obvious result of Lellock's removal of students from Meyers-Jeffrey's classroom. At most, Plaintiff has alleged that Zangaro was negligent in failing to recognize the risk of harm posed by Lellock's behavior—and even that is a stretch because Plaintiff pleads nothing more than legal conclusions. *See, e.g.*, Second Am. Compl. ¶ 55 ("The Plaintiff believes, and therefore avers, that Defendant Zangaro knew, suspected, and/or should have known that Lellock's removal of him from classrooms by Defendant Lellock would result in a substantial possibility that his civil rights would be violated."). Such allegations are insufficient to establish supervisory liability. *See Thomas v. Bd. of Educ. of Brandywine Sch. Dist.*, 759 F. Supp. 2d 477, 497 (D. Del. 2010) ("Plaintiff must demonstrate not that Harter knew that driving students home could potentially lead to sexual abuse, but instead that Harter knew enough to 'point plainly' toward ongoing sexual abuse by Holt, or at least a 'known' and 'obvious' risk that such abuse was practically certain to happen.").

For similar reasons, Plaintiff fares no better with his failure-to-train theory. A supervisory official can be held liable in his individual capacity to the same extent as a municipality when his failure to train subordinates results in a constitutional violation. *See Sample v. Deicks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Just like the knowledge-and-acquiescence theory, however, this theory requires Plaintiff to establish deliberate indifference. *Id.* Only when a relevant policymaker has "actual or constructive notice that a particular omission in [a] training program causes [] employees to violate citizens' constitutional rights," may the policymaker "be deemed deliberately indifferent if [he] choose[s] to retain that

program." *Connick*, 131 S. Ct. at 1360 (citation omitted). Typically, a plaintiff must point to "a pattern of similar constitutional violations" committed in the past "by untrained employees . . . to demonstrate deliberate indifference for purposes of failure to train." *Id.* (citation omitted). However, "in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 1361 (internal quotation marks omitted). In such case, a plaintiff must show that "it was 'highly predictable'" that a failure to adopt specific training would lead to violations of citizens' civil rights. *Id.* at 1365.

In this case, Plaintiff has failed to allege that Zangaro had final policymaking authority with regard to the training of teachers. *See Santiago*, 629 F.3d at 135 n.11 (While decision whether someone "is a final policymaker is ultimately a legal rather than a factual question [] that does not relieve [Plaintiff] of the obligation to plead in some fashion that [Zangaro] had final policy making authority, as that is a key element of a *Monell* claim."). Even assuming that he did, Plaintiff's conclusory allegations are insufficient to establish that Zangaro was actually or constructively aware of a pattern of constitutional violations, which would suggest the need to alter the teachers' training on the purported policy.[5] Furthermore, this is not one of the rare "single-incident" cases, in which the need for training was so obvious that a prior pattern of violations need not be shown. *See Connick*, 131 S. Ct. at 1361 (citation omitted). The facts (as opposed to legal conclusions) alleged in the Second Amended Complaint do not suggest that it was "*so* predictable that failing to train" teachers on the policy that purportedly prohibited school

---

[5] Insofar as Plaintiff might argue that he has established a pattern of violations by alleging that other students were being pulled out of Meyers-Jeffrey's class room and being abused by Lellock, this argument would fail. All of this conduct was allegedly occurring at approximately the same time as the alleged abuse of Plaintiff was occurring, and the Supreme Court has instructed that evidence of contemporaneous or subsequent conduct is irrelevant in failure-to-train cases because it does not "provide notice . . . and the opportunity to conform to constitutional dictate." *Connick*, 131 S. Ct. at 1360 n.7 (citing *Canton v. Harris*, 489 U.S. 378, 395 (1989)).

police officers from removing students from classrooms would result in the violation of students' constitutional rights. *Id.* at 1365 (emphasis in original). The Court reaffirms what it said in its prior Memorandum Opinion:

> A teacher's decision to permit school police officers to remove students from classrooms does not inherently threaten the students' welfare. There may be instances where a school police officer has a legitimate reason to take a student out of the classroom. Thus, it cannot be said that sexual abuse of students was the plainly obvious consequence of permitting school police officers to remove students from classrooms upon request.

ECF No. 30 (citing *Douglas v. Brookville Area Sch. Dist.*, 836 F. Supp. 2d 329, 364 (W.D. Pa. 2011)). Accordingly, Plaintiff has again failed to plead a plausible theory of recovery against Zangaro. The claim against him, in his official and individual capacities, will be **DISMISSED** with prejudice.

## IV. Conclusion

Based on the foregoing reasons, the motion to dismiss will be **GRANTED**. Plaintiff has had three opportunities to attempt to plead a valid theory of recovery against school district employees and the school district for Lellock's violation of Plaintiff's Fourteenth Amendment rights. He has failed to do so. No further amendments will be permitted, as they would be futile. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID JANKOWSKI,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:13-cv-194** |
| **v.** | ) |
| | ) |
| **ROBERT LELLOCK, LYNN MEYERS-** | ) |
| **JEFFREY, and RONALD ZANGARO,** | ) |
| *individually and in their official capacities***,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## ORDER OF COURT

**AND NOW**, this 17th day of March 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the MOTION TO DISMISS COUNTS II & III OF THE SECOND AMENDED COMPLAINT (ECF No. 36), filed by the Defendants Lynn Meyers-Jeffrey and Ronald Zangaro, individually and in their official capacities, is **GRANTED**.

**IT IS FURTHER ORDERED** that the caption of this action is hereby amended as follows:

| | |
|---|---|
| **DAVID JANKOWSKI,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **2:13-cv-194** |
| **v.** | ) |
| | ) |
| **ROBERT LELLOCK,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

Defendant Robert Lellock shall file a responsive pleading to Plaintiff's Second Amended Complaint on or before March 31, 2014.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:   **Gary M. Lang, Esquire**
      Email: gml@fglmlaw.com
      **Amanda B. Kraft, Esquire**
      Email: abk@fgsmlaw.com
      **Justin T. Papciak, Esquire**
      Email: jtp@fglmlaw.com

      *Counsel for Plaintiff*

      **Stacey F. Vernallis, Esquire**
      Email: svernallis@grblaw.com
      **Ira Weiss, Esquire**
      Email: iraweiss@weisslawoffices.com
      **Matthew Fergus, Esquire**
      Email: mfergus@grblaw.com

      *Counsel for Defendants Meyers-Jeffrey and Zangaro*